## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Banjelister Qamunga, | |
| Plaintiff, | Civil File No. _____ |
| v. | |
| Zwicker & Associates, P.C., Eugene G. Randono, Brannon T. Stephany and Allyce C. Lindahl, | |
| Defendants. | |

## COMPLAINT

## JURY TRIAL DEMANDED

## I.  INTRODUCTION

1.      The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, to eliminate abusive collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2.      Plaintiff Banjelister Qamunga brings this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, against Defendant Zwicker and Associates, P.C. and its debt collection agents, including the other named Defendants, in their illegal efforts to collect a consumer debt from Plaintiff. Mainly, its egregious attempt to collect a debt that is no longer owed by Banjelister Quamunga. Such debt collection activities amount to abusive debt collection practices.

## II. JURISDICTION

3.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 for subject matter jurisdiction and pursuant to 15 U.S.C. § 1692k(d) for claims under the Fair Debt Collection Practices Act.

4.      Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

5.      Defendants have transacted business within the State of Minnesota by attempting to collect a debt from Plaintiff via mail, telephone, and its civil court system, and registering its entity to do business in Minnesota, while Plaintiff was located within and permanently residing within the State of Minnesota.

6.      Defendants have transacted business within the State of Minnesota by operating a law office, practicing law in Minnesota, being licensed in Minnesota, sending and receiving mail within Minnesota, and maintaining collection employees in Minnesota.

### III.  PARTIES

7.     Plaintiff Banjelister Qamunga (hereinafter "Plaintiff" or "Qamunga") is a natural person who resides in the City of Minneapolis, County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or a person affected by a violation of that law.

8.     Qamunga has suffered an injury in fact that is traceable to the Defendants' conduct and that is likely to be redressed by a favorable decision in this matter.

9.     Defendant Zwicker & Associates, P.C. ("Zwicker") is a Minnesota corporation and law firm operating from a principal office address of 3050 Metro Drive, Suite 115, Bloomington, MN 55425.

10.    Zwicker was retained by American Express National Bank ("American Express") to collect a debt on its behalf.

11.    Defendant Eugene Glenn Randono ("Randono") is an individual of Minnesota.

12.    Randono is a licensed Minnesota Lawyer, Minnesota bar number 392922, registered with the Judicial Branch of Minnesota and employed at Zwicker & Associates, P.C., 3050 Metro Drive, Suite 115, Bloomington, MN 55425.

13.    Defendant Brannon Thomas Stephany ("Stephany") is an individual of Minnesota.

14.    Stephany is a licensed Minnesota Lawyer, Minnesota bar number 388571, registered with the Judicial Branch of Minnesota and employed at Zwicker & Associates, P.C., 3050 Metro Drive, Suite 115, Bloomington, MN 55425.

15.     Defendant Allyce Corrin Lindahl ("Lindahl") is an individual of Minnesota.

16.     Lindahl is a licensed Minnesota Lawyer, Minnesota bar number, registered

with the Judicial Branch of Minnesota and employed at Zwicker & Associates,

P.C., 3050 Metro Drive, Suite 115, Bloomington, MN 55425.

17.     Zwicker, Randono, Stephany, and Lindahl (collectively "Defendants") are

"debt collectors" within the meaning of 15 U.S.C. § 1692a(6), using an

instrumentality of interstate commerce or the mails in a business with the

principal purpose of collecting debts owed or due of another or who regularly

enforces security interests.

## IV.  FACTS

18.     Prior to November 3, 2018, Qamunga allegedly incurred a financial

obligation that was primarily for personal, family or household purposes, namely

a line of credit from American Express, in the approximate amount of $5,763.76

(hereinafter the "American Express Debt").

19.     The American Express Debt is a "debt" as that term is defined under 15

U.S.C. § 1692a(5).

20.     Upon information and belief, on or about 2018, American Express retained

Defendants to collect the American Express debt on its behalf.

21.      Plaintiff disputes this alleged debt, the final bill of this account, and any

remaining balance, and is represented by the undersigned counsel both with

respect to this debt and to the claims made herein.

### *The American Express Debt is Dismissed with Prejudice*

22.     On or about November 3, 2018, Defendants served a state-court lawsuit on Qamunga for the collection of the American Express debt.

23.     On that day, a Hennepin County Sheriff's Deputy personally served Qamunga with a physical copy of the summons and complaint.

24.     By November 3, 2019, Defendants had taken no action to prosecute Qamunga and failed to file its complaint with the district court.

25.     In Minnesota state court, parties are given the opportunity to commence proceedings without initially filing the complaint. *See* Minn. R. Civ. P. 3.

26.     However, under Rule 5.04 of the Minnesota Rules of Civil Procedure, "any action that is not filed with the court within one year of commencement against any party is deemed dismissed with prejudice against all parties . . . ."

27.     By November 2019, because Defendants had failed to file the complaint within one year of commencement of the action, the action against Qamunga for the American Express debt was dismissed with prejudice as a matter of law.

### *Subsequent Efforts to Collect a Time-Barred Debt*

28.     On or about March 12, 2020, Defendants formally filed its action against Qamunga with the Hennepin County District Court.

29.     Defendants filed the Complaint despite the fact that the matter had been dismissed with prejudice.

30.     The duty of tracking filing dates for the purpose of compliance with Minn. R. Civ. P. 5.04 falls on counsel.

31.     An attorney's duty includes the duty to timely prosecute any action in conformity of the court rules, including Rule 5.04.  Minn. R. Civ. P. 1, 11.

32.     Stephany was the signing attorney on the Summons and Complaint.

33.     In signing those pleadings, Stephany attested that the filing was not being brought for an improper purpose and acknowledged that reasonable attorney fees and costs may be awarded pursuant to Minn. Stat. § 549.211 in the eventuality that the complaint is brought for an improper purpose or otherwise violates that statute.

34.     At that time, Defendants, including Stephany, failed to disclose that the claim had been procedurally dismissed for failing to file the complaint within one year.

35.     The filing of the complaint in March 2020 was an affirmative action taken after dismissal, which was an attempt to collect a time-barred debt that was not owing or legally enforceable against Qamunga.

36.     By filing the complaint after it had been dismissed with prejudice as a matter of law, Defendants made a false representation as to the character, amount, or legal status of the American Express debt.

37.     The summons and complaint also indicated that Randono was co-counsel on the matter.

38.     Randono is the attorney listed on the district court docket as the attorney for American Express.

39.     Randono is also the managing attorney at the firm.

40.     On July 22, 2020, Lindahl, on behalf of all Defendants, sent a letter to the District Court Administrator of Hennepin County requesting additional time for Defendants to bring a motion for summary judgment.

41.     Lindahl's July 22, 2020 letter further misrepresented the legal status of the debt to the district court by requesting additional time to prosecute the American Express debt, implying to the district court that the debt was enforceable and not procedurally dismissed with prejudice in November 2019.

42.     It was not until August 26, 2020, nearly six months after filing the complaint, that Defendants represented the need for relief from the Rule 5.04 dismissal.

43.     On August 26, 2020, Defendants filed a motion to vacate the dismissal and for contemporaneous summary adjudication of the American Express debt.

44.     The motion was signed by Randono.

45.     The affidavit of service by mail was signed by Lindahl.

46.     Within their motion, Defendants represented to the district court that after realizing they had missed the Rule 5.04 filing deadline, they sought an administrative default judgment against Qamunga.

47.     American Express, through counsel, states in its motion that "[a]fter realizing its mistake" it subsequently "sought entry of administrative default judgment."

48.     Defendants characterize the seeking of administrative default as a way to remedy the "mistake" of not complying with the court rules and filing the action within a year of commencement.

49.     Seeking a default judgment for an action that is not filed within one year of commencement of the action is inconsistent and contrary to the language of Rule 5.04.

50.     Defendants' motion did not include a copy of its request for administrative default to the District Court Administrator, nor did it include an affidavit attesting to their alleged conduct or remedial measures taken after missing the Rule 5.04 deadline.

51.     Defendants' filing of the complaint, seeking default judgment, and also seeking contemporaneous vacation of the dismissal and summary adjudication, all after the action has been dismissed with prejudice, is an abuse of process and an effort to collect a debt that is not owed.

52.     Beginning around March 2020, Defendants' multiple attempts to prosecute the claim, despite knowing the action had been dismissed with prejudice in November 2019, is an abuse of process and an effort to collect a debt that is not owed.

53.     Defendants' efforts to seek administrative default against Qamunga after the action had been dismissed with prejudice, purportedly as an effort to remedy the "mistake" caused by their failure to follow rule 5.04, is an abuse of process and an effort to collect a debt that is not owed.

54.     From March 2020 to August 26, 2020, none of the Defendants motioned or represented to the district court that the debt was uncollectable and relief from judgment was necessary before prosecuting the claim. Instead, Defendants sought additional time pursuant to the scheduling order to bring a motion for summary judgment.

55.     In seeking time for summary judgment, Defendants did not inform the district court that the matter had been dismissed as a matter of law, and summary adjudication relief would not be available to them unless and until the dismissal was vacated.

56.     Subsequently, when Defendants did finally bring a motion to vacate the judgment for failure to follow Rule 5.04, they did it contemporaneous with a motion for summary judgment.

57.     Because the matter is dismissed, summary judgment relief is not available to Defendants.

58.     Bringing a motion to vacate the judgment contemporaneous with summary judgment is an attempt to deprive Qamunga of her rights to bring defenses, affirmative defenses, and counterclaims in case the dismissal was vacated, which is an abuse of process.

59.     Since the matter was filed in March 2020, Randono, Stephany, and Lindahl all appeared in the matter.  However, none of them took action to properly apprise the district court of the action's dismissal, meet and confer with

Qamunga, honor the dismissal with prejudice, or otherwise correct their abuse of process or prevent the deprivation of Qamunga's due process rights.

60.    Defendants have used false and deceptive collection practice in violation of the FDCPA in an attempt to collect the American Express debt from Qamunga.

61.    Upon information and belief, Defendants have engaged in a pattern of seeking judgments on a time-barred debt through fraud upon the state court.

62.    Under Minn. Stat. § 481.07:  An attorney who, with intent to deceive a court or a party to an action or judicial proceeding, is guilty of or consents to any deceit or collusion, shall be guilty of a misdemeanor; and, in addition to the punishment prescribed therefore, the attorney shall be liable to the party injured in treble damages.

63.    By filing the complaint in March 2020 and prosecuting the claim through August 2020, Zwicker, through its debt collector agents, deceived the district court as to the legal status and character of the American Express debt.

64.    Under Minn. R. Civ. P. 115.10, no hearing on a motion will be heard unless the parties have conferred either in person, or by telephone, or in writing in an attempt to resolve their differences prior to the hearing. The moving party has the duty to initiate the conference.

65.    Defendants have never attempted to meet and confer with Qamunga.

66.    Because the Motion to Vacate and for Summary Judgment seeks the determination that Qamunga owes money that she does not, Defendants have

made false representations as to the legal status and character of the American Express debt.

67.    Upon learning of Defendants' efforts seeking summary adjudication for a debt that is not owed, Qamunga was shocked, horrified and extremely upset that Defendants had continued their efforts to collect a debt that was no longer owing.

68.    Qamunga has been actually damaged as she has incurred attorneys' fees to defend the action against Defendants.

69.    Qamunga has also suffered emotional distress as a result of Defendants' attempts to collect the American Express debt because she genuinely believed that the debt may not have expired and was owing.

70.    ". . . [T]he FDCPA bars a debt collector from filing or threatening a lawsuit to collect a time-barred debt." *Nelson v. Midland Credit Mgmt., Inc.*, 828 F.3d 749, 751 (8th Cir. 2016) (quoting *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001)).

71.    Defendants' collection efforts against Qamunga were illegal actions and omissions in an effort to collect the American Express debt in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(a)(1), 1692c(b), 1692d, 1692e, 1692e(2), 1692e(5), 1692e(9), 1692e(1), 1692f, and 1692f(1), among others, as well as violations of other state laws.

72.    To the date of this complaint, Defendants have failed to meet and confer, as required by the Minnesota rules, to resolve the issues put forth above. Instead,

Defendants are proceeding to the hearing date for their motion to vacate and for summary judgment without complying with the rules.

**Summary**

73.    The above-described collection conduct by Defendants in their efforts to collect this alleged debt from Plaintiff were oppressive, deceptive, misleading, unfair and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA.

74.    These collection actions taken by Defendants, and the collection employees employed by Zwicker, were made in violation of multiple provisions of the FDCPA, including but not limited to all of the provisions of the FDCPA cited herein.

75.    These violations by Defendants were knowing, willful, negligent and/or intentional, and Zwicker did not maintain procedures reasonably adapted to avoid any such violations.

76.    Defendants' collection efforts with respect to this alleged debt from Plaintiff caused Plaintiff to suffer concrete and particularized harm because the FDCPA provides Plaintiff with the legally protected right to be treated fairly and truthfully with respect to any action for the collection of any consumer debt.

77.    Defendants' deceptive, misleading and unfair representations with respect to its collection effort were material misrepresentations that affected and frustrated Plaintiff's ability to substantively respond to Defendants' collection efforts because Plaintiff could not adequately respond to the Defendants' collection efforts related to a debt that did not exist.

78.     Plaintiff has suffered emotional distress and has actual damages as a result of the conduct by Defendants in filing suit against Plaintiff on a debt that it knew was time-barred.

## Respondeat Superior Liability

79.     Defendants' actions and omissions herein of the individuals employed to collect debts, and the other debt collectors employed as agents of Zwicker who communicated with Plaintiff, were committed within the time and space limits of their agency relationship with their principal, Zwicker.

80.     The acts and omissions by these individuals and these other debt collectors were incident to, or of the same general nature as, the responsibilities these agents were authorized to perform by Zwicker in collecting consumer debts.

81.     By committing these acts and omissions against Plaintiff, these individuals and these other debt collectors were motivated to benefit their principal.

82.     Zwicker is therefore liable to Plaintiff through the Doctrine of *Respondeat Superior* for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA in its attempts to collect this debt from Plaintiff.

## V.  TRIAL BY JURY

83.     Plaintiff request a trial by jury on all issues so triable.  U.S. Const. amend. 7. Fed. R. Civ. P. 38.

## VI.  LEGAL CLAIMS

### COUNT I

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (15 U.S.C. § 1692 *et seq.*)

84.     Plaintiff incorporates by reference all of the above paragraphs in this Complaint.

85.     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 *et seq.*, with respect to Plaintiff.

86.     As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendants.

### COUNT II

### MALICIOUS PROSECUTION

87.     Plaintiff incorporates by reference all of the above paragraphs in this Complaint.

88.     The Minnesota Court of Appeals has held that,

> To state a claim for malicious prosecution, a claimant must demonstrate that:
>
> > (1) the action was brought without probable cause or reasonable belief that the plaintiff would ultimately prevail on the merits; (2) the action must be instituted and prosecuted

> with malicious intent; and (3) the action must terminate in favor of [claimant]

*Kellar v. VonHoltum,* 568 N.W.2d 186, 192 (Minn. Ct.

App.1997), *review denied* (Minn. Oct. 31, 1997). "Probable cause for

pursuing a civil action consists of such facts and circumstances as

will warrant a cautious, reasonable and prudent person in the honest

belief that his action and the means taken in prosecution of it are

just, legal and proper." *First Nat'l Bank of Omaha v. Marquette*

*Nat'l Bank,* 482 F.Supp. 514, 522–23 (D. Minn. 1979), *aff'd,* 636

F.2d 195 (8th Cir. 1980), *cert. denied,* 450 U.S. 1042 (1981).

*Dunham v. Roer*, 708 N.W.2d 552, 569 (Minn. Ct. App. 2006).

89. Defendants lacked the requisite probable cause to believe that they could

prevail on the merits of this civil suit, because this alleged debt was for a time-

barred debt.

90. Defendants' representations in its correspondence and motions to the

district court included false representations in an attempt to defraud the district

court.

91. The civil suit was instituted with malicious intent as evidence by the fact

that Defendants were clearly barred from commencing it after they failed to file

the complaint within one-year of its commencement.

92. Defendants also acted with malicious intent because it had filed the

complaint in March 2020, proceeded to prosecuted to the claim, and did not

disclose to the Court it needed to vacate the November 2019 dismissal until its August 26, 2020 motion.

93.     Plaintiff was clearly and unfairly twice-vexed by this civil suit brought against her after Defendants knew that this judgment had expired and was time-barred.

94.     Defendants' conduct as further describe herein therefore states a claim for malicious prosecution with respect to Plaintiff.

## COUNT III

## ABUSE OF PROCESS

95.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint.

96.     In defining the legal contours of a claim for an abuse of process, the Minnesota Supreme Court has held:

> In *Hoppe v. Klapperich*, 224 Minn. 224, 231, 28 N.W.2d 780, 786 (1947), we stated:
>
> '* * * **The essential elements of an action for abuse of process are only two, namely, (a) the existence of an Ulterior purpose, and (b) the act of using the process to accomplish a result not within the scope of the proceeding in which it was issued, whether such result might otherwise be lawfully obtained or not.** The gist of the action is the misuse or misapplication of the process, after it has once been issued, for an end other than that which it was designed to accomplish.' (Italics supplied in part.)
>
> The court went on to observe that **the test is whether the process was used to accomplish an unlawful end for which it was not designed or intended, or to compel a party to do a collateral act which he is not legally**

16

> **required to do.** It was also noted that there must be injury
> to either person or property and that indirect injury to
> business or good name is insufficient. *Behrendt v.*
> *Rassmussen*, 234 Minn. 97, 47 N.W.2d 779 (1951).

*Kittler & Hedelson v. Sheehan Properties, Inc.*, 295 Minn. 232, 238–39, 203

N.W.2d 835, 840 (1973) (emphasis added).

97.    By commencing the civil suit on a debt underlying an action dismissed with

prejudice, Defendants had an ulterior purpose in attempting to make Plaintiff pay

this alleged debt, when that alleged debt was in fact no debt was owed.

98.    By commencing the civil suit, Defendants sought to compel Plaintiff to do a

collateral act which Plaintiff was not legally required to do, namely, to defend

another lawsuit for this debt even though the action was dismissed.

99.    Defendants' conduct as further described herein therefore states a claim for

an abuse of process with respect to Plaintiff.

### COUNT IV

### ATTORNEY FRAUD AND DECEIT

100.   Plaintiff incorporates by reference all of the above paragraphs of this

Complaint.

101.   Defendant Randono was an attorney licensed to practice in the State of

Minnesota at all times material to this complaint.

102.   Defendant Stephany was an attorney licensed to practice in the State of

Minnesota at all times material to this complaint.

103.   Defendant Lindahl was an attorney licensed to practice in the State of

Minnesota at all times material to this complaint.

104.   Under Minn. Stat. § 481.06, "[e]very attorney at law shall:

> (1) observe and carry out the terms of the attorney's oath . . .
> (3) counsel or maintain such causes only as appear to the
> attorney legal and just . . . (4) employ . . .  such means only as
> are consistent with truth . . . (6) encourage the commencement
> or continuation of no action or proceeding from motives of
> passion or interest."

105.   According to Minn. Stat. § 358.07(9), in relevant part, attorneys swear an

oath that they will use no falsehood or deceit:

> You do swear that you will support the Constitution of the
> United States and that of the state of Minnesota, and will
> conduct yourself as an attorney and counselor at law in an
> upright and courteous manner, to the best of your learning
> and ability, with all good fidelity as well to the court as to the
> client, and that you will use no falsehood or deceit, nor delay
> any person's cause for lucre or malice. So help you God.

106.   Based on Defendant Randono's above-described actions, Defendant

Randono has failed to maintain his oath and has failed to carry out his duties as

an attorney in the State of Minnesota.

107.   Because of Defendant Randono's failure to carry out his duties as an

attorney, Plaintiff has suffered extensive damages.

108.   Based on Defendant Stephany's above-described actions, Defendant

Stephany has failed to maintain his oath and has failed to carry out his duties as

an attorney in the State of Minnesota.

109.   Because of Defendant Stephany's failure to carry out his duties as an

attorney, Plaintiff has suffered extensive damages.

110.   Based on Defendant Lindahl's above-described actions, Defendant Lindahl has failed to maintain her oath and has failed to carry out her duties as an attorney in the State of Minnesota.

111.   Because of Defendant Lindahl's failure to carry out her duties as an attorney, Plaintiff has suffered extensive damages.

112.   Minn. Stat. § 481.071 provides that "[e]very attorney or counselor at law who shall be guilty of any deceit or collusion . . . shall forfeit to the party injured treble damages, to be recovered in a civil action."

113.   Accordingly, Defendants Randono, Stephany, and Lindahl, who by collusion and deceit injured Plaintiff, shall forfeit to Plaintiff treble damages.

114.   As a direct and proximate cause of Defendants Randono's, Stephany's, and Lindahl's breach of their duties as attorneys in the state of Minnesota, Plaintiff has suffered actual damages in an amount to be determined by a jury and is entitled to costs, reasonable attorney's fees, and other equitable relief as determined by the court.

115.   Pursuant to Minn. Stat. §§ 481.07 and 481.071, Defendants Randono, Stephany, and Lindahl are liable to Plaintiff for treble damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Banjelister Qamunga prays for judgment against Zwicker & Associates, P.C., Eugene G. Randono, Brannon T. Stephany and Allyce C. Lindahl, as follows:

1.     For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1), for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A), and for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3);

2.     For an award of actual and compensatory damages against Defendants and for Plaintiff in an amount to be determined by a jury for their malicious prosecution;

3.     For an award of actual and compensatory damages against Defendants and for Plaintiff in an amount to be determined by a jury for its abuse of process;

4.     For an award of treble damages in an amount based upon the value of the funds taken from Plaintiff by Defendants in excess of the amounts permitted by law and her additional actual damages, pursuant to Minn. Stat. § 481.71, against each Defendant and for Plaintiff; and

5.     For such other and further relief as to the Court appears just and equitable, including an order awarding Plaintiff her costs, disbursements, and attorney's fees.

Dated: September 18, 2020          **CHRISTENSEN LAW OFFICE PLLC**

                                  /s/Carl E. Christensen
                                  Carl E. Christensen (#350412)
                                  Attorney for Plaintiff
                                  800 Washington Avenue, Suite 704
                                  Minneapolis, MN 55401

(612) 823-4016
carl@clawoffice.com